**SO ORDERED.**

**SIGNED this 22 day of November, 2011.**

_____
**J. Rich Leonard
United States Bankruptcy Judge**

_____

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## RALEIGH DIVISION

IN RE:

JACQUELINE MARIE ROBINSON,                  CASE NO. 07-02146-8-JRL
                                            CHAPTER 13
    DEBTOR.

_____

### ORDER

This matter came before the court on Residential Credit Solutions' ("RCS") motion for relief from the automatic stay. A hearing was held on October 20, 2011 in Raleigh, North Carolina.

It is undisputed that the debtor executed a promissory note for $98,500.00 ("note") in favor of First Citizens Bank & Trust Company ("First Citizens") on December 23, 2004. The note is secured by a deed of trust encumbering real property in Garner, North Carolina. The debtor contends that Central Loan Administration ("Cenlar") is her mortgage company, and that she has been making payments to Cenlar since the loan's inception. RCS contends that the note and deed of trust have since been transferred and assigned to RCS.

The debtor filed for relief under chapter 13 of the Bankruptcy Code on September 26, 2007. Cenlar filed a proof of claim in the debtor's case on October 24, 2007. In the proof of

claim, Cenlar purported to be the holder of the debtor's mortgage claim and did not identify itself as a loan servicer for First Citizens. Attached to the proof of claim was a copy of the note executed by the debtor in favor of First Citizens and a copy of the deed of trust. The note did not contain any other indorsement. The debtor's chapter 13 plan was confirmed on December 27, 2007. On March 6, 2008, Cenlar filed a motion for relief from the automatic stay. This motion was later resolved by consent order entered April 3, 2008. First Citizens filed a motion for relief from the automatic stay on July 21, 2010. In that motion, First Citizens alleged to be the "holder or servicer" of the note. On August 19, 2010, a consent order was entered to resolve First Citizens' motion. The consent order stated that Cenlar is the holder or servicer of the note and directed the debtor to make her monthly payments to Cenlar.

On March 3, 2011, RCS filed a document entitled transfer of claim other than for security to put the court and debtor on notice that Cenlar had transferred its claim to RCS. RCS sent notice to the debtor to make her mortgage payments to it instead of Cenlar and the debtor complied. According to RCS, the debtor was to continue paying the current mortgage payments to RCS outside of the plan. The debtor admits that she has fallen behind on her post-petition mortgage payments.

On September 21, 2011, RCS filed a motion for relief from the automatic stay along with a copy of the original note and an assignment of the deed of trust. The debtor filed a response on October 4, 2011, asserting RCS was not a real party-in-interest and thus did not have standing to bring the present motion. At the hearing, RCS introduced the original promissory note into evidence which contained an indorsement from First Citizens to Self-Help Ventures Fund. It is apparent from the note that at some point Self-Help Ventures made a blank indorsement of the

note. However, the precise chain of holders is unclear. It is also unclear whether a formal assignment of the deed of trust was ever made to RCS. The assignment of the deed of trust entered into evidence was signed by Alicia Wood on behalf of MERS as nominee for First Citizens. The debtor presented uncontradicted evidence that Alicia Wood is an officer or director for RCS.

## JURISDICTION

This bankruptcy court has jurisdiction over the parties and the subject matter of this proceeding pursuant to 28 U.S.C. §§ 151, 157, and 1334, and the General Order of Reference entered by the United States District Court for the Eastern District of North Carolina on August 3, 1984. All of these matters are core proceedings within the meaning of 28 U.S.C. § 157(b)(2), which this court may hear and determine.

## DISCUSSION

### STANDING

The debtor contends that RCS failed to establish a chain of indorsements sufficient to establish that RCS is the current holder of the note and thus is not a true party-in-interest with standing to file a motion for relief from the automatic stay. RCS argues that it has a right to payment which makes it a real party-in-interest. Specifically, RCS' right to payment comes from being the holder of a note indorsed in blank.

Pursuant to 11 U.S.C. § 362(d) "[o]n request of a party in interest and after notice and a hearing, the court shall grant relief from the stay[.]" The term "party in interest" is not defined in the Code. "When interpreting the meaning of Code terms such as 'party in interest', [the court is] governed by the Code's purposes." In re Comcoach Corp., 698 F.2d 571, 573 (2d. Cir. 1983)

(citing Kokoszka v. Belford, 417 U.S. 642, 645–46, 94 S.Ct. 2431, 2433–34 (1974)). Bankruptcy courts provide a forum for creditors and debtors to settle their disputes. Id. Therefore, RCS "must be either a creditor or a debtor to invoke the court's jurisdiction." Id. The Code defines "creditor" as an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor." 11 U.S.C. § 101(10)(A). "The real party in interest with respect to . . . enforcement of the rights of a mortgagee in a bankruptcy is the party entitled to enforce the note and its accompanying mortgage." In re Smoak, No. 09-30421, 2011 WL 4502596 (Bankr. S.D. Ohio Sept. 28, 2011). Therefore the first question is whether RCS has the right to enforce the note.

Pursuant to North Carolina law, the holder of a negotiable instrument, including a promissory note, has the right to enforce it. See N.C. Gen. Stat. § 25-3-301. Section 25-1-201(21) of the North Carolina General Statutes defines holder as "[t]he person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession." N.C. Gen. Stat. § 25-1-201(21) (2011). A promissory note may be a negotiable instrument. See N.C. Gen. Stat. § 25-3-104; see also Smith v. Rushing Const. Co., 353 S.E.2d 692, 694 (N.C.App. 1987) ("In order to be a negotiable instrument, the note must be signed and must contain an unconditional promise to pay a sum certain in money to order or to bearer on demand or at a definite time."). "If an indorsement is made by the holder of an instrument and it is not a special indorsement, it is a 'blank indorsement[.]' When indorsed in blank, an instrument becomes payable to bearer and may be negotiated by transfer of possession alone until specially indorsed." N.C. Gen. Stat. § 25-3-205(b). In determining whether a person is a holder, "[i]t is the fact of possession which is significant . . . and the absence of possession

4

defeats that status." Connolly v. Potts (In re Connolly), 306 S.E.2d 123, 125 (N.C.App. 1983). However, "'[m]ere possession' of a note by a party to whom the note has neither been indorsed nor made payable 'does not suffice to prove ownership or holder status.'" In re Adams, 693 S.E. 2d 705, 710 (N.C.App. 2010) (quoting Econo-Travel Motor Hotel Corp. v. Taylor, 271 S.E.2d 54, 57 (N.C. 1980)).

In In re David A. Simpson, P.C., 711 S.E.2d 165, 173 (N.C.App. 2011), the court held that Deutsche Bank Trust Company Americas as Trustee for Residential Accredit Loans, Inc. was not the holder of a note because the note had been indorsed to Deutsche Bank Trust Company Americas as Trustee. The court reasoned that "the indorsement does not identify [Deutsche Bank Trust Company Americas as Trustee for Residential Accredit Loans, Inc.] and is not indorsed in blank or to bearer, it cannot be competent evidence that [Deutsche Bank Trust Company Americas as Trustee for Residential Accredit Loans, Inc.] is the holder of the Note." Id. citing N.C. Gen.Stat. § 25–1–201(b)(21) and Econo–Travel Motor Hotel Corp., 271 S.E.2d at 57 ("defendants established that plaintiff was not the owner or holder of the note" because the note was indorsed to an entity other than the plaintiff).

This is not a situation where RCS is in possession of a note that has been indorsed to another entity. Unlike Simpson, the note in this case has been indorsed in blank. At the hearing, RCS entered the original promissory note with the blank indorsement into evidence. Thus RCS is clearly the holder of the note because it is in possession of the original note indorsed in blank.

The next question is whether RCS can enforce the accompanying deed of trust. The debtor contends that RCS does not have a valid security interest in the deed of trust encumbering the debtor's real property. RCS argues that it has a security interest in the deed of trust as

evidenced by an assignment made by MERS as nominee for First Citizens to RCS.  RCS also argues that under North Carolina law the deed of trust follows the note, meaning the transfer of the note is also a transfer of rights to the collateral securing the note.  The debtor argues that the assignment of the deed of trust may be fraudulent.  The assignment of the deed of trust purports to be signed by Alicia Wood as assistant secretary for MERS as nominee for First Citizens Bank and Trust Company.  However, the debtor introduced into evidence a list of RCS' officers and directors that name Alicia Wood as Vice President and Assistant.

The court acknowledges that the assignment of the deed of trust in this case appears suspect.  However, it is well settled under North Carolina law that the deed of trust follows the note.  In Jenkins v. Wilkinson, the court held that the

> [t]he debt is the principal thing; the mortgage to secure it is the incident or accessory. Equity puts the principal and accessory upon a footing of equality, and gives to the assignee of the evidence of the debt the same rights in regard to both.  The transfer of the note carries with it the security without any formal assignment or deliver, or even mention, of the latter.

18 S.E. 696, 697 (N.C. 1893) (internal quotation marks omitted); see also Hyman v. Devereux, 63 N.C. 624, 1869 WL 1521, *5 (N.C. 1869) ( "When a debt is secured by a mortgage, the debt is the principal, and the mortgage only the incident: an assignment of the debt passes all the rights of the creditor in the mortgage.").  Here, there is no evidence to suggest that the original note, indorsed in blank, is fraudulent.  Therefore because the deed of trust follows the note, the holder of the note, which in this case is RCS, has the right to the interest securing the note without a formal assignment.  Thus, RCS is a real party in interest with standing to bring this motion.

**RELIEF FROM THE AUTOMATIC STAY**

RCS contends that the debtor's default on her post-petition mortgage payments entitles RCS to relief from the automatic stay. Section 362 of the Bankruptcy Code provides that a debtor's bankruptcy petition automatically stays "any act to obtain possession of . . . or to exercise control over property of the estate," as well as "any act to collect . . . or recover a claim against the debtor that arose before the commencement of the case . . . ." 11 U.S.C. § 362(a). However, the court may terminate the automatic stay – (1) for cause; (2) if the debtor has no equity in the property and the property is not necessary to an effective reorganization; or (3) in a single asset real estate case, 90 days after filing unless the plan of reorganization "has a reasonable possibility of being confirmed within a reasonable time," or if the debtor "has commenced monthly payments that are in an amount equal to interest . . . on the value of the creditor's interest in the real estate." Id.

It is undisputed that the debtor has failed to make payments to RCS. The debtor argues that she has the ability to make her payments, but has failed to do so because she did not believe that RCS was the true holder of the note. The debtor has proposed that she be granted a six-month cure with a 30 day drop dead provision. At the hearing, the trustee did not object to giving the debtor time to cure.

Based on the foregoing, RCS' motion for relief from the automatic stay is **DENIED**. The debtor will make her payments to RCS. The debtor will have six months to cure her post-petition arrearage, and if she fails to make these payments within 30 days from the time they become due the stay will automatically lift without the need for another hearing.

**END OF DOCUMENT**